UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KAITLYN S.,

          Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

20-CV-0728-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 18)

Plaintiff Kaitlyn S.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 15) is granted, defendant's motion (Dkt. No. 16) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND

Plaintiff filed an application for SSI on August 15, 2016, alleging disability beginning December 13, 1996, her date of birth, due to dextrocardia, knee problems, ankle problems, brain problems, an underdeveloped lung, asthma, migraines, hormonal issues, and scimitar syndrome. (Tr. 127-33, 142)[2] Her application was denied at the initial level and again after a *de novo* hearing before an Administrative Law Judge ("ALJ"). (Tr. 25-36, 43-70, 84-90)

Plaintiff appeared *pro se* at the administrative hearing. (Tr. 42) She subsequently obtained legal representation and requested review of the ALJ's unfavorable decision. (Tr. 20-21)

On April 16, 2020, the Appeals Council denied plaintiff's request for review. (Tr. 1-6) This action followed. (Dkt. No. 1)

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

---

[2] References to "Tr." are to the administrative record in this case. (Dkt. No. 10)

2

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the

claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.*  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant

does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

5

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 15, 2016, the application date. (Tr. 27) At step two, the ALJ found that plaintiff had the severe impairments of scimitar syndrome,[3] migraines, asthma, conversion disorder, and anxiety disorder. (Tr. 27) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 27-29) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform:

> [A] full range of work at all exertional levels but with the following nonexertional limitations; can climb ramps, stairs, ladders, ropes or scaffolds occasionally, can occasionally balance, stoop, kneel, crouch and crawl, can never work at unprotected heights; never around moving mechanical parts and never operate a motor vehicle. She can work in dust, odors, fumes and pulmonary irritants occasionally, in vibration occasionally and in a moderate noise environment. She is able to perform simple, routine tasks and is able to perform simple work-related decisions.

(Tr. 29)

---

[3] Scimitar syndrome is "[a] rare developmental defect during embryogenesis where some or all of the pulmonary veins drain into the right atrium or the systemic veins, with or without the presence of pulmonary venous obstruction, leading to various manifestations such as fatigue, exertional dyspnea, pulmonary arterial hypertension, cyanosis and progressive congestive heart failure." *See* https://rarediseases.info.nih.gov/diseases/4599/scimitar-syndrome (last accessed August 24, 2021).

Proceeding to step four, the ALJ found that plaintiff had no past relevant work. (Tr. 34) At step five, the ALJ found that plaintiff could perform representative occupations such as marker, linen room attendant, and order clerk. (Tr. 35) Accordingly, the ALJ found that plaintiff was not disabled under the Act. (Tr. 35-36)

IV.   *Plaintiff's Challenges*

Plaintiff argues that that remand is required on the following grounds: (1) the ALJ failed to develop the record in light of plaintiff's *pro se* status and "obvious gaps;" (2) the lack of a complete record tainted the ALJ's step five finding; and (3) the ALJ improperly relied upon her own lay opinion in formulating the RFC. (Dkt. No. 15-1 at 16- 30)

For the reasons that follow, the Court agrees that remand is required.

**A.   The RFC is unsupported by substantial evidence.**

The RFC is "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling 96-8p, 1996 WL 374184, at *2). To properly determine RFC, the ALJ must assess all relevant medical and other evidence in the record. See 20 C.F.R. §§ 404.1545 (a)(1), 416.945 (a)(1). Such evidence includes, *inter alia*, objective medical evidence, medical opinions, medical history, clinical findings, and the claimant's own assessment of limitations. 20 C.F.R. §§ 404.1513 (a)(1)-(5); 416.913 (a)(1)-(5); *see also Josua S. v. Comm'r of Soc. Sec.*, No. 19-CV-1434, 2021 WL 105769, at *4 (N.D.N.Y. Jan. 11, 2021) ("In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.") (collecting cases). While the ALJ is precluded from substituting his or her own opinion for competent medical evidence, the ALJ is

nonetheless entitled to weigh all of the evidence, resolve conflicts within it, and reach an RFC that is consistent with the record as a whole. See *Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016). The ALJ's RFC determination need neither track nor correspond perfectly with any single medical opinion. *Id.*

In this case, the only functional assessment of record regarding plaintiff's physical impairments was provided by consultative examiner Dr. Nikita Dave. (Tr. 317-321) On examination, Dr. Dave found that plaintiff was moderately obese with a limited squat. (Tr. 319) Dr. Dave heard slight wheezing in her lungs and noted plaintiff's heart sounds were louder on the right than the left with an obvious difference. (Tr. 320) Plaintiff had bilateral knee flexion limited to 140 degrees, and sensation decreased to light touch in both calves and lateral legs. (Tr. 320) She opined that plaintiff should avoid ladders, heights, sharp and dangerous equipment and machinery, extremes of temperature, smoke, dust, fumes, inhalants, and chemicals. (Tr. 321) Dr. Dave further found that plaintiff had "moderate to marked limitation for severe physical exertion due to cardiac problem" and "possibly she would have moderate to marked limitations for all activities transiently during bout of a severe headache." (Tr. 321) Dr. Dave opined plaintiff had "moderate limitations for squatting, kneeling, and crouching due to knee histories." (Tr. 321)

The ALJ, in finding that plaintiff was capable of a full range of work at all exertional levels but with certain nonexertional limitations, gave Dr. Dave's opinion limited weight because it was "based on a one time exam and inconsistent with the overall medical record." (Tr. 34)[4] The ALJ summarized the medical data and cited a summary note

---

[4] The ALJ went on to afford great weight to the opinion of the psychiatric consultative examiner, who found no limitations, yet this opinion was also based on a one-time examination. (*See id.* [opinion was "based on examination and program knowledge."]).

8

dated October, 2018, by cardiologist Dr. Joseph Orie, M.D., which indicated "no limitations on her current activity out of the ordinary" in support of the RFC. (Tr. 34, see Tr. 546) It is unclear, though, from Dr. Orie's notes, whether plaintiff's limitations were due to her general cardiac condition or her recent surgery, or what was meant by limitations "out of the ordinary." (Tr. 546) This is in contrast with the specific medical opinion of Dr. Dave, as well as plaintiff's testimony that she got winded easily, could not lift more than 10-15 pounds, and could not bend over due to difficulty breathing. (Tr. 31, see Tr. 51-52) Plaintiff also testified that a cardiac surgery in 2017 did not clear up "any of [her] issues." (Tr. 52)

Further, the record reveals that plaintiff has a complex history of cardiac impairments and migraines. (Tr. 331-332, 341, 343, 449, 442) For example, after plaintiff's January 2017 heart surgery, Dr. Orie noted that the clinical evidence and examination was consistent with the diagnosis of partial anomalous pulmonary venous return of the right upper pulmonary veins status post attempted unsuccessful surgical baffling. (Tr. 546, 548, 550) He reported plaintiff's "surgically placed venous baffle has progressed from postoperative findings of accelerated pulmonary venous return in the anastomosis site to total occlusion" and that plaintiff had a "tortuous pop-off to the left atrium." (Id.)

In rejecting Dr. Dave's specific medical opinion and relying on Dr. Orie's vague statement identifying no limitations "out of the ordinary," the ALJ should have recontacted Dr. Orie for clarification, as it appears that plaintiff had at least some limitations due to her cardiac impairments but what those limitations were is unclear from the record. See, e.g. Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) ("Dr. Naughten's opinion is remarkably

vague. What Dr. Naughten means by "mild degree" and "intermittent" is left to the ALJ's sheer speculation.") Under these circumstances, particularly where plaintiff proceeded *pro se* at the administrative hearing, a treating opinion should have been obtained. *See Garcia o/b/o R.A.S. v. Colvin*, No. 16-CV-6378, 2018 WL 1081019, at *2 (W.D.N.Y. Feb. 28, 2018) ("Where, as here, the plaintiff is proceeding *pro se* . . . this duty [to develop the administrative record] is heightened . . . . Because the opinions of treating physicians are entitled to controlling weight, where the record lacks opinion evidence from a treating physician assessing a claimant's impairments, the ALJ has generally "f[allen] short of discharging [his] duty to develop the record," and remand is required.") (quoting *Santos v. Barnhart*, No. 04 CV 2050, 2005 WL 119359, at *8 (E.D.N.Y. Jan. 7, 2005), other citations and quotations omitted).

The ALJ also did not explain how Dr. Orie's notation or the other evidence relied upon (plaintiff's activities of daily living, such as grocery shopping and looking for jobs online) supported an RFC of all exertional levels. *See, e.g., Mancuso v. Colvin*, No. 12-CV-642, 2013 WL 3324006, *3 (W.D.N.Y. July 1, 2013) (noting that "an expert's opinion that uses vague phrases may not constitute substantial evidence to support an RFC determination when it is 'accompanied by no additional information, so as to prevent the ALJ, as a layperson, from being able to make the necessary inference whether [p]laintiff can perform the particular requirements of a specified type of work.'") (citing *Burgess v. Astrue*, 537 F.3d 117, 128-29 (2d Cir. 2008)). By concluding that plaintiff could perform work at all exertional levels, the ALJ implicitly determined that plaintiff could also perform "very heavy work," which is defined as "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R.

§ 404.1567(e). However, the ALJ's decision contains no reference to specific record evidence or medical opinion supporting this conclusion. *See, e.g., Catalano v. Berryhill*, No. 17-CV-7120, 2018 WL 6437059, at *8 (S.D.N.Y. Dec. 7, 2018) ("the ALJ[ ] appears to have assumed that a claimant who does not suffer any exertional limitations can be presumed to be capable of lifting and carrying 100 pounds occasionally and 50 pounds frequently . . . That presumption is flawed, however, because a person without any medically recognizable impairments may be unable to lift and carry such weights.") (internal quotation omitted).

The Court is mindful that "it is not *per se* error for an ALJ to make the RFC determination absent a medical opinion, and remand is not necessary where 'the record contains sufficient evidence from which an ALJ can assess the [plaintiff]'s [RFC].'" *Williams v. Colvin*, 2016 WL 2640349, *3 (W.D.N.Y. 2016) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 34 (2d Cir. 2013) (summary order)). Such is not the case here. The ALJ rejected the only functional assessment on record, leaving no medical opinion regarding plaintiff's cardiac status and restrictions and no clear opinion regarding plaintiff's migraines. In addition, the ALJ failed to explain how the relied-upon evidence affected plaintiff's ability to work at all exertional levels. Remand is therefore required for further development of the record with respect to plaintiff's cardiac condition and migraine headaches. *See, e.g., Guillen v. Berryhill*, 697 Fed. Appx. 107, 109 (remanding to further develop the record where ALJ failed to obtain a medical source statement from the claimant's treating physician, and "[t]he medical records discuss her illnesses and suggest treatment for them, but offer no insight into how her impairments affect or do not affect her ability to work").

11

Because the Court has determined that remand is warranted on this basis, it need not reach plaintiff's remaining arguments.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 16) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

SO ORDERED.

Dated:   September 7, 2021
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge